IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

NICOLE WEST                                                                      PLAINTIFF


v.                                          5:06CV00098-WRW


SEAARK MARINE, INC.                                                          DEFENDANT


**OPINION AND ORDER**

**Introduction**

Plaintiff filed suit in the Pulaski County Circuit Court on April 5, 2006, alleging sexual

harassment, retaliation, and gender discrimination under Title VII and the Arkansas Civil Rights Act

("ACRA").  The case was removed on April 21, 2006, based on federal question jurisdiction.  The

claims against the two individual defendants were dismissed by a May 16, 2006 order leaving

Plaintiff's employer as the only Defendant.

On January 8, 2007, Defendant filed a motion for partial summary judgment on the claims

of sex discrimination and sexual harassment.  This motion is supported by brief, exhibits, and a

statement of undisputed facts in compliance with Local Rule 56.1.  Defendant argues that Plaintiff

cannot prove sex discrimination because she has not suffered any adverse employment action.

Defendant also asserts that Plaintiff's sexual harassment claim should be dismissed as untimely and

that she cannot establish a *prima facie* case of sexual harassment because the conduct complained

of was not so severe or pervasive as to create a hostile work environment.

Plaintiff responded to Defendant's motion on January 22, 2007, with brief, exhibits, and a responsive Local Rule 56.1 statement.  She counters that she timely filed her EEOC charge; that there is a one-year statute of limitations under the ACRA; and that she suffered a tangible job detriment in the form of a hostile work environment and by her termination.

On January 12, 2007, Plaintiff filed a motion for partial summary judgment as to liability on her retaliation claim.  She contends that there is no dispute that she complained of discrimination, that she was terminated, and that she was terminated because of her complaint although the facts as to the exact sequence of events leading to termination may differ.  Defendant responded on January 23, 2007, that there are material facts in dispute as to whether Plaintiff was fired and, if so, whether she was fired in retaliation of filing a complaint.

**Summary Judgment Standard**

Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party.  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[1]  The non-moving party may not just rest upon his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial.[2]  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law."[3]

---

[1]Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2512 (1986).

[2]Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986); Civil Procedure Rule 56.

[3]Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989).

**Background**

Plaintiff worked for M-K Industries ("M-K"), which provided contract labor to Defendant, from March 22, 2004 to September 15, 2004.[4]  Her duties were to pull parts, deliver parts, pick up parts, transfer parts from one plant to another, and inventory.  There was no team coordinator over supply during Plaintiff's employment with M-K, but Bob Hall, Vice President of Manufacturing, oversaw the department.  During this time, John Gannaway worked in the small parts department, but he was not a supervisor.

According to Plaintiff, Gannaway began sexually harassing Plaintiff soon after she began working for Defendant.  He would send messages to Plaintiff through Maple Neal, a co-worker, that he was having dreams about Plaintiff, and that he wanted to have sex with Plaintiff.  Gannaway also allegedly tried to get Plaintiff to come in his office three or four times a week so he could hug and kiss her although she would tell him "No" and "Stop."  Plaintiff also alleges that Gannaway offered her money on multiple occasions although she did not know why he did so.  Gannaway also allegedly made comments like "Hey, sexy," "Hey beautiful," or "when are we going to hook up," and "stuff like that" "throughout" the time she worked there.

Plaintiff testified in her deposition[5] that she complained to Hall about what was going on with Gannaway.  She stated that he told her "Don't worry about it, I will take care of it" and "Just don't go to Gay."[6]  However, Plaintiff testified that nothing seemed to change.  She talked to Hall a second time and he asked "It is still going on?"  He assured her that he would take care of it and

---

[4]Plaintiff testified at page 12 of her December 21, 2006 deposition "that could be correct."

[5]Pages 17-18.

[6] Gay Rabb.

not to worry.  Plaintiff left Defendant to go to school to obtain her heavy equipment operating license and partly because of Gannaway.

Plaintiff returned to Defendant in January 2005 as an employee of Defendant.  Since her employment with M-K, Gannaway had been named Team Coordinator over the supply department.  Plaintiff testified that she did not tell anyone what happened the first time she had worked there for M-K because she had already discussed it with Hall.  She felt like things would be different because of the passage of time and that Gannaway would be different.

One of the responsibilities of the supply department is to pick up or deliver parts out of town.  Plaintiff and Neal were primarily responsible for making out of town trips.  After Neal left, Plaintiff and Blake Hicks made the deliveries.  Plaintiff often made trips to Crossett, Warren, and Little Rock.  Plaintiff testified that making deliveries was not a preferred job in the supply department unless the person liked to drive, but it was not a job that was avoided.

Plaintiff testified that Gannaway began harassing her the second time in February 2005.  She alleges that Gannaway would make sexual comments to her; that he would send messages to her through Neal; that he would ask her to go out with him; and suggested that he meet her and her friends somewhere to have a few drinks.  Plaintiff alleges that she and Brittany Sullivan – Plaintiff's girl friend and another employee of Defendant – were together when Gannaway approached them and told them he wanted to "hookup" with them.  She also alleges that once when she was at Sullivan's desk, Gannaway approached them and said, "Damn, y'all are sexy."

She testified that she complained to Hall in February 2005 and again in April 2005 when she asked him if there was a different part of the plant where she could work and he responded that there was nowhere else to put her.  After April 2005, Plaintiff believed things improved with Gannaway

-4-

in him not making sexual comments although he began cursing, yelling, and banging his fist on a table at morning meetings with everybody present.  She believes she complained to Hall without result.

On August 11, 2005, Gannaway informed Plaintiff that there was an engine that needed to be delivered to Little Rock.  Gannaway told Plaintiff that he was sending Hicks rather than Plaintiff. Plaintiff testified that Gannaway said he was not sending her to do the job because it was "not a job for a woman to do, haul a big engine."  When she asked him what he meant, Gannaway allegedly replied that he had "to start seeing [her] as a lady instead of one of the guys, or one of the men." Plaintiff asked him why since he had never done so before.  Plaintiff accused Gannaway of discrimination, and he allegedly replied, "[T]he only discrimination that goes on is whenever you whip out that dildo in front of all us men."

After the incident, Plaintiff went to Charles Posey, Materials Manager and supervisor to Gannaway, and stated that she would like to make a written complaint about Gannaway's behavior. In her complaint, Plaintiff stated that Gannaway had to told her that he did not feel a woman could do the job of taking the engine to Little Rock, and she also mentioned Gannaway's comment about the dildo.

Plaintiff was not upset that Hicks was chosen to go to Little Rock instead of her.  She was upset that Gannaway said that it was not a job for a woman.  The alleged comment on August 11, 2005 was the first time that Gannaway made a statement about a woman not being able to do a job although Plaintiff contends that he had done other discriminatory things before as set out above.

Posey claims that on Saturday, August 13, 2005, Plaintiff called and submitted her two weeks notice.  He admits that he did not permit Plaintiff to work the remainder of her alleged two week notice.

Plaintiff filed her EEOC charge on October 24, 2005.  She alleged discrimination based on her sex and in retaliation for complaining about gender discrimination in violation of Title VII and the ACRA.

Recently, the Eighth Circuit Court of Appeals provided the following guide in <u>Higgins v. Gonzales</u>, 481 F.3d 578, 584 (8th Cir. 2007)(internal quotation marks and citations omitted), as to the standards to be used in dealing with a discrimination claim:

> Under the <u>McDonnell Douglas</u>[7] framework, a presumption of discrimination is created when the plaintiff meets [her] burden of establishing a *prima facie* case of employment discrimination.  A minimal evidentiary showing will satisfy this burden of production.  To establish her *prima facie* case of racial discrimination, Higgins must show: 1) she is a member of a protected class; 2) she met her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) similarly situated employees who were not members of the protected class were treated differently.

> [An] adverse employment action must be one that produces a material employment disadvantage. Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge. Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage do not satisfy the prong.

Defendant asserts that Plaintiff has failed to establish a sex discrimination case since she cannot show an adverse employment action as her "sole basis for Plaintiff's gender discrimination claim is that she was not allowed to take an engine to Little Rock allegedly because she was a

---

[7]<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

woman."[8]  Plaintiff contends that the August 11, 2005 incident with the engine was merely a part of the course of conduct by Gannaway involving sexual comments and conduct, the retaliatory form of harassment by him in yelling and banging his fists on a table, and then her being fired within five days of complaining to two supervisors.  She acknowledges that the single August 11, 2005 incident would not be actionable on its own, but that it is actionable as part of a continuous hostile work environment culminating in her termination.

I find that Plaintiff not being permitted to deliver the engine to Little Rock was a minor change in duties that does not rise to the level of an adverse action.

Since Plaintiff has raised a separate hostile work environment claim which will be addressed below, her argument in response to the non-hostile work environment gender discrimination claim is not sufficient to survive summary judgment.  Other than the hostile work environment allegations, the incident with the engine is the only occurrence identified by Plaintiff as gender discrimination. Plaintiff has admitted that she was not upset that Hicks was chosen to go to Little Rock instead of her, only that Gannaway had said that it was not a job for a woman.

**Analysis**

I now turn to the hostile work environment claim.  The case of <u>Vajdl v. Mesabi Academy of KidsPeace, Inc.</u>, No. 06-2482, 2007 WL 1201867, at *1-2 (8th Cir. Apr. 25, 2007)(internal quotations and citations omitted), addresses the standards to be used when a court is faced with a hostile work environment claim as follows:

> Sexual discrimination that creates a hostile or abusive work environment is a violation of Title VII of the Civil Rights Act of 1964.  A hostile work environment arises when sexual

---

[8]Defendant's January 8, 2007 Brief in Support of Motion for Partial Summary Judgment at page 8.

conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

Hostile work environment claims are limited in nature, requiring a high evidentiary showing that the plaintiff's workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

To establish a prima facie hostile work environment claim, a plaintiff must prove: (1) that she was a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.

In general, an employer is vicariously liable for a hostile work environment created by a supervisor.[9]

To determine whether the harassment affected a term, condition, or privilege of employment, we consider "the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior interferes with plaintiff's performance on the job." "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." In order to affect the term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to create an objectively hostile work environment, and in addition, must be subjectively perceived by the plaintiff as abusive.

Wright v. Rolette County, 417 F.3d 879, 885 (8th Cir. 2005)(internal citations omitted).

Plaintiff has alleged that Gannaway, who had previously made sexual comments directly to her and through Neal and tried to have repeated – almost daily – physical contact when Plaintiff worked for M-K, resumed his behavior in February of 2005.  She has alleged that Gannaway, now her supervisor, would make sexual comments to Plaintiff, that he would send messages to her through Neal, that he would ask her to go out with him, and suggested that he meet her and her friends somewhere to have a few drinks.  Plaintiff has further alleged that Gannaway approached

---

[9]See, Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

Sullivan and Plaintiff and told them he wanted to "hookup" with them and another time at Sullivan's desk, Gannaway approached them and said, "Damn, y'all are sexy."

If Plaintiff's allegations are true, Gannaway's behavior was more serious than teasing and it was not sporadic nor isolated especially when considered with the background of her alleged previous experience with Gannaway and her unanswered complaints to Hall when she worked for M-K, less than a year earlier.  Moreover, according to Plaintiff, Gannaway sent messages though a co-worker and also made comments to Plaintiff and her girl friend/co-worker so that others witnessed the allegedly inappropriate behavior.

Defendant has argued that Plaintiff's EEOC charge was not timely as only the August 11, 2005 incident was within180 days of the filing of the charge.

The Eighth Circuit, in finding that a seven month interval did not disrupt the hostile work environment in Rowe v. Hussmann Corp., 381 F.3d 775, 780-781 (8th Cir. 2004), explained:

> In Morgan,[10] the Supreme Court noted that where acts contributing to a hostile work environment occur on days 1-100 and day 401, "it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole."  Id., 536 U.S. at 118.  The Court went on to affirm the Ninth Circuit's judgment that the plaintiff was entitled to a trial on his hostile work environment claim because the Court could not "say that [the pre-and post-limitations incidents] [we]re not part of the same actionable hostile work environment claim." Morgan, 536 U.S. at 121; cf. Jensen v. Henderson, 315 F.3d 854, 859 (8th Cir. 2002).

Here, taking Plaintiff's testimony to be true, only three months elapsed between April and August when Gannaway made his remarks about why he was not permitting Plaintiff to deliver the engine and his theory that she was the one discriminating by her using a dildo.  Moreover, Plaintiff is correct that Ark. Code Ann. § 16-123-107(c)(3)  provides "[a]ny action based on employment

---

[10] Nat'l RR Passenger Corp. v. Morgan, 536 U.S. 101, 115, 117 (2002).

discrimination in violation of subdivision (a)(1) of this section shall be brought within one (1) year after the alleged employment discrimination occurred, or within ninety (90) days of receipt of a "Right to Sue" letter or a notice of "Determination" from the United States Equal Employment Opportunity Commission concerning the alleged unlawful employment practice, whichever is later."

Defendant is not entitled to summary judgment on Plaintiff's hostile work environment claim.

> As in a Title VII discrimination claim, in a retaliation claim the plaintiff bears the burden of establishing a *prima facie* case.  After <u>Burlington Northern</u>,[11] to establish such a claim, Higgins must show: 1) she engaged in protected conduct; 2) a reasonable employee would have found the challenged retaliatory action materially adverse; and 3) the materially adverse action was causally linked to the protected conduct.  <u>Burlington N.</u>, 126 S.Ct. at 2415; <u>cf.</u> <u>Singletary v. Mo. Dept. of Corrs.</u>, 423 F.3d 886, 892 (8th Cir. 2005) (articulating old standard where, to satisfy the second prong, the plaintiff was required to show he suffered an adverse employment action).

<u>Higgins v. Gonzales</u>, 481 F.3d at 589.

I find that there are material factual disputes presented by the testimony of Plaintiff, Posey and Rabb as to the alleged events on August 13 and 16, 2005 as to whether Plaintiff resigned giving two weeks notice, why she was not permitted to work the two weeks, and why she was paid only through August 19, 2005.  Thus, summary judgment as to liability on the retaliation claim is denied.

**Conclusion**

Accordingly, Defendant's January 8, 2007 Motion (Docket No. 27) for Partial Summary Judgment is GRANTED IN PART as to the gender discrimination claim and DENIED IN PART as to sexual harassment or hostile environment claim.  Plaintiff's January 12, 2007 Motion (Docket No. 32) for Partial Summary Judgment as to liability on the retaliation claim is DENIED.

---

[11] <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, ___ U.S.____, 126 S.Ct. 2405 (2006).

IT IS SO ORDERED this 11th day of May, 2007.


                                        /s/Wm. R. Wilson, Jr.
                                        UNITED STATES DISTRICT JUDGE